IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 13-cv-01830-CMA

DEBRA GLENN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Social Security Commissioner,

    Defendant.

---

**ORDER REVERSING AND REMANDING ALJ'S DECISION
DENYING SOCIAL SECURITY BENEFITS**

---

This matter is before the Court on review of the Commissioner's decision to deny Plaintiff Debra A. Glenn's ("Plaintiff") application for social security disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33.  Jurisdiction is proper under 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. MEDICAL EVIDENCE

Plaintiff was born on January 1, 1972, and was 37 years old on the date of her alleged disability onset.  (AR at 22, 36.)[1]  She received a high school education up to the tenth grade, and obtained a GED.  (AR at 37.)  Plaintiff reported that she previously worked as a housekeeper, cashier, and store manager.  (AR at 38-39.)  With regard to

---

[1] Citations to the Social Security Administrative Record, which is found at Doc. # 7, will be to "AR" followed by the relevant page number.

her physiological ailments, Plaintiff's complains that she suffers from back and neck pain, a bulging disc in her back, back spasms, numbness in her right leg, carpal tunnel syndrome, and headaches. (AR at 41-42, 167.)  In 2005, she was diagnosed with osteoblastoma and underwent surgery to remove the tumor and to fuse her spine. Plaintiff has not had a recurrence of the cancer. (AR at 368-75.)  Plaintiff testified that she is awaiting surgery on a bulging disk and is prescribed medications to manage her pain. (AR at 42.)  Plaintiff was also diagnosed with depression and anxiety.  She takes antidepressants with no side effects. (AR at 42-43, 49, 213.)  Plaintiff testified that for the past year, she has smoked a pack of cigarettes every four days.  Prior to that, she smoked two packs of cigarettes per day. (AR at 43.)

### B.   PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits, alleging a disability onset date of September 1, 2009.  After her initial application was denied, Plaintiff requested a hearing, which was held on August 24, 2011, before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on September 13, 2011. (AR at 22-31.)

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2011.  In applying the five-step sequential evaluation process outlined in 20 C.F.R. §§ 404.1520 and 416.920 to determine whether Plaintiff was disabled, the ALJ determined that:

1. Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 30, 2011 [Step 1];

2. Plaintiff had the following severe impairments: history of osteoblastoma in 2005, without recurrence and a history of spinal fusion at the T11-L2 level with residual pain [Step 2];

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [Step 3];

4. Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant requires a sit/stand option.  The claimant can crouch, kneel, and crawl frequently.  She can occasionally climb stairs, balance, and stoop, but cannot climb ladders, ropes, or scaffolds.  The claimant is to avoid concentrated exposure to extreme cold and unprotected heights." [Step 4]; and

5. Plaintiff was able to perform her past relevant work as a cashier, telephone order clerk, retail manager, and a returns clerk [Step 5].

The Appeals Council denied Plaintiff's request for review.  (AR at 1-3.)  On July 11, 2013, Plaintiff filed her appeal of the Commissioner's final decision.  (Doc. # 1.) Plaintiff filed her opening brief on November, 20, 2013, the Commissioner responded on December 6, 2013, and Plaintiff replied on January 14, 2014.  (Doc. ## 10, 11, 14.)

## II. STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." Id. (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). "Evidence is not substantial if it is overwhelmed by other evidence in the record." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In so reviewing, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006).

3

## III. ANALYSIS

Plaintiff raises three arguments in support of her contention that the ALJ committed errors in rendering her decision. Specifically, Plaintiff argues that the ALJ erred in: (1) assigning no weight to her treating physician's opinion, (2) failing to conduct a proper legal analysis and misstating the evidence such that the decision is not supported by substantial evidence, and (3) assessing Plaintiff's credibility.

### A. WHETHER THE ALJ ERRED BY ASSIGNING NO WEIGHT TO THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN

Plaintiff argues that the ALJ erred when she assigned no weight to the opinion of Dr. Eidson, Plaintiff's treating physician. Specifically, Plaintiff argues that Dr. Eidson's opinion was entitled to controlling weight. Alternatively, she argues that the ALJ should have assigned some weight to Dr. Eidson's opinion rather than outright rejecting it.

Dr. Eidson treated Plaintiff monthly beginning on May 7, 2010. On June 9, 2011, he completed a Lumbar Spine Medical Source Statement, known in Social Security lexicon as an RFC form. Dr. Eidson indicated that, "per patient" report, Plaintiff could sit for 30 minutes at a time, stand for five minutes at a time, and tolerate moderate or normal work stress. Dr. Eidson further opined that, in an eight hour work day, Plaintiff could stand or walk for less than two hours and sit for about four hours, she needed an option to shift positions at will, to walk every 30 minutes, and to take unscheduled breaks approximately every two hours. Dr. Eidson stated that Plaintiff could lift 10 lbs. rarely, but never more than that amount; she could twist rarely, stoop, and crouch occasionally, but never climb ladders or stairs. He also opined that her impairments would likely result in Plaintiff's absence from work more than four days per month.

According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). In deciding how much weight to give a treating physician's opinion, an ALJ must first determine if the opinion is entitled to controlling weight. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). An opinion is entitled to controlling weight if it is well-supported by the medical evidence and is consistent with other substantial evidence in the record. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen,* 876 F.2d 1451, 1453 (10th Cir. 1989) (internal quotation marks omitted).

Whether a treating physician is entitled to controlling weight is subject to a sequential analysis. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, she must then confirm that the opinion is "not inconsistent with other substantial evidence in [the] case record." *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Watkins*, 350 F. 3d at 1300.

Even if a treating physician's opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c). Under Tenth Circuit case law, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and citations omitted).

In weighing Dr. Eidson's opinion, the ALJ stated:

> Although there is a treating relationship between claimant and Dr. E[id]son, this opinion is not supported by the evidence of record. Dr. E[id]son's restrictions stand in contrast to the relatively benign clinical findings and conservative treatment provided throughout the claimant's relationship with Dr. E[id]son.

(AR at 30.)

The ALJ does not identify which clinical findings she considers "relatively benign." However, one can infer that she is referring to the MRI and physical examinations, which were precisely what Dr. Eidson relied upon in rendering his opinion, as indicated on his RFC form. *Cf. Krauser v. Astrue,* 638 F.3d 1324, 1331 (10th Cir. 2011) ("It may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, but that is best left for the ALJ [her]self to do in the proceedings on remand.") The Tenth Circuit has repeatedly warned that

assigning no weight to a treating physician is particularly problematic when there is no contrary opinion in the record. In *Kemp v. Bowen*, the court explained:

> In the case of Mrs. Kemp there was not even evidence from a consulting physician retained by the agency to contradict the medical diagnosis, findings, and conclusions of her treating physician, Dr. Brown. While the ALJ is authorized to make a final decision concerning disability, he can not [sic] interpose [her] own "medical expertise" over that of a physician, especially when that physician is the regular treating doctor for the disability applicant.

816 F.2d 1469, 1476 (10th Cir. 1987); *see also Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (ALJ erred in assigning no weight to an uncontroverted consulting examiner's opinion). Similarly, here, Dr. Eidson was Plaintiff's treating physician and no contrary medical opinion exists in the record. Under these circumstances, although the ALJ was entitled to not give Dr. Eidson's opinion controlling weight pursuant to 20 C.F.R. § 404.1527(c)(2), it is problematic that she chose to give no weight at all, despite the absence of a contrary medical opinion. *See Lamb v. Barnhart*, 85 Fed. Appx. 52, 57 (10th Cir. 2003) (remanding for lack of substantial evidence in RFC determination where no doctors had specifically addressed the plaintiff's exertional limitations); *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (same).

When evidence from Plaintiff's treating doctor is deemed insufficient to determine whether a claimant is disabled, the Commissioner should contact the treating doctor to determine if additional information is available. *See* 20 C.F.R. 404.1512(e); *Fleetwood v. Barnhart*, 211 F. App'x 736, 742 (10th Cir. 2007). If recontacting the physician does not adequately provide substantial evidence, the ALJ may order a consultative examination. *See* 20 C.F.R. 404.1512(e). In particular, a consultative examination

should be ordered when "[a] conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved" and the Commissioner is "unable to do so by recontacting your medical source." See 20 C.F.R. 404.1512(b)(4). Accordingly, the Court remands this case to the ALJ to develop a record that demonstrates that her RFC is based on substantial evidence. The ALJ may develop the record by seeking clarification or supplemental information concerning Plaintiff's functional limitations, or by ordering a consultative examination.[2]

In addition, the ALJ discredited Dr. Eidson's opinion because it was "based on the claimant's self-report as opposed to objective findings . . . ." (AR at 30.) This explanation presents two separate problems. First, the RFC form indicates only three specific instances in which Plaintiff's self-report may have informed Dr. Eidson's opinion. It does not demonstrate that the remaining opinions were also the product of Plaintiff's self-report. Second, the ALJ's decision does not explain how Dr. Eidson's opinion is inconsistent with his objective findings. Yet, the RFC form indicates Dr. Eidson's clinical findings: that Plaintiff had an abnormal musculoskeletal exam and an MRI indicating postsurgical changes and moderate central disc herniation. In her review of the medical evidence, the ALJ acknowledged that during her visits to Dr. Eidson, Plaintiff consistently complained of back pain and a physical examination showed "periodic

---

[2] With respect to the ALJ's suggestion that Dr. Eidson's opinion was inconsistent with the record due to a "conservative treatment" regimen, other courts have determined that it is improper to discount a treating source opinion on this basis. See, e.g., Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (district court erred in discounting treating source opinion because he did not prescribe stronger pain medication, among other treatments); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000) (district court erred in ruling that the treating physician's "recommend[ation] of] only conservative physical therapy, hot packs, EMG testing—not surgery or prescription drugs—[w]as substantial evidence that [the claimant] was not physically disabled"). Although these precedents are not binding on this Court, they are persuasive.

tenderness, weakness, reduced sensation, and reduced lumbar range of motion." (AR at 28.)  Without specific references to the those portions of the record that are inconsistent, it is difficult for this Court to determine how the ALJ arrived at her conclusion that Dr. Eidson's opinion was inconsistent with his objective findings. Likewise, the ALJ claims that Dr. Eidson's opinion "departs substantially from the remainder of the medical record", but does not explain how this is so.  *See Krauser,* 638 F.3d at 1331 (reversing ALJ decision that stated treating source's opinion was inconsistent with the record "in conclusory fashion, without reference to those portions of the record with which [the doctor's] opinion was allegedly inconsistent").

As further explanation for assigning no weight to Dr. Eidson's opinion, the ALJ stated:

> The possibility exists that a doctor may express an opinion in an effort to assist a patient with whom he sympathizes for various reasons.  Notably, it is also possible that a doctor may provide supportive notes or reports in order to satisfy patient requests and avoid unnecessary doctor/patient tension.  While it is difficult to confirm such situations when the[y] occur, they appear to be more likely when the physician opinion in question departs substantially from the remainder of the medical record.

(AR at 30.)

In *Frey v Bowen,* the Tenth Circuit held that an ALJ could not reject a treating physician's opinion on the ground that "a family doctor naturally advocates his patient's cause" because "[i]t is a conclusory statement that contradicts our established legal rule, without suggesting some exceptional basis in the facts of this case."  816 F.2d 508, 515 (10th Cir. 1987) (internal quotation marks omitted).  Recently, in *Crowder v. Colvin*, the Tenth Circuit reiterated that holding and determined that an ALJ erred when he

9

rejected a consultant examiner's opinion because the claimant's attorney requested the examination.  No. 13-1222, 2014 WL 1388164, *2 (10th Cir. Apr. 10, 2014).  Despite the ALJ's assertion that opinion was inconsistent, which the court separately found unpersuasive, the court determined that there was no exceptional basis for ignoring the general rule.  *Id.*  Similarly, here, the ALJ has not stated, no does the record reveal an "exceptional basis in the facts of this case" for discrediting Dr. Eidson's opinion because of an alleged bias, thereby ignoring the rule that a treating physician's opinion is entitled to deference.  The ALJ seems to recognize as much—she insinuated Dr. Eidson fabricated his findings, yet acknowledged that "it is difficult to confirm such situations". (AR at 30.)

The Tenth Circuit has previously admonished an ALJ for discounting a treating physician's opinion "based upon [her] own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.'"  *Langley,* 373 F.3d at 1121.  The court explained, " '[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*' "  *Id.* (emphasis in original) (quoting *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002)).  Because the Court has determined that a remand is necessary, the ALJ should specifically address whether there is an "exceptional basis in the facts of this case" for ignoring the treating physician rule.

**B.      WHETHER THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff contends that the ALJ erred by failing to conduct the proper legal analysis of the medical evidence and by misstating the evidence in the record such that her decision is not supported by substantial evidence.

After considering the evidence in the record, the ALJ concluded that:

> Although the claimant's impairments are severe, the evidence does not support the assertion that they preclude her from completing basic work related activities within the parameters of the [RFC] described above. I have placed the claimant at a light exertional level with a sit/stand option and additional postural limitations due to her back condition, documented by abnormal diagnostic findings.[3]

(AR at 30.)  The Court is unable to discern how the ALJ arrived at this conclusion and is required to scrutinize whether the ALJ's decision is supported by substantial evidence. *See Wall*, 561 F.3d at 1052.

The ALJ reviewed the record to find support for Plaintiff's claims of chronic pain. The ALJ first discussed the MRI results which demonstrated stable presentation of post-operative levels and confirmed a moderate disc bulge and central disc herniation at L5-S1, without noted stenosis or cord compression.  The ALJ noted that Plaintiff was prescribed medication for her pain.  Clinical findings showed a stiff gait, reduced lumbar range of motion, tenderness to palpitation, weakness, and reduced sensation.  The ALJ also noted that Plaintiff was diagnosed with osteoblastoma in 2005, and underwent removal surgery and a spinal fusion at T11-L2, but has not experienced a recurrence of bone cancer.  (AR at 28-29.)

---

[3] The ALJ also did not "accommodate[] the claimant's alleged mental impairment."  (AR at 30.) Plaintiff does not contest this portion of the RFC.

The ALJ was not persuaded that Plaintiff was impaired to the degree found by Dr. Eidson. The ALJ found that Plaintiff

> received acupuncture therapy . . . [but,] has not had any hospital visits or admissions for her conditions, . . . has not received massage therapy, completed a physical therapy series, had pain mitigating injections, or received chiropractic adjustments. Moreover, she has neither sought nor been referred to specialists in spinal care. The claimant's history of largely conservative treatment does not support allegations of disabling conditions.

(AR at 29.) While this Court is cautious not to reweigh the evidence in the record, *see Salazar,* 468 F.3d at 621, it shares Plaintiff's concern that in various instances, the ALJ misstated the record evidence. For instance, the record demonstrates that Plaintiff received both massage therapy and a chiropractic adjustment in November 2008 (AR at 253), and that Dr. Eidson referred her to Dr. Cohen, a neurologist.[4] (AR at 279, 289, 382-83.)

Moreover, despite a thorough, albeit at times flawed, analysis of the record, the ALJ fails to explain why or how her findings support her determination that Plaintiff can frequently crouch, kneel, and crawl; can occasionally climb stairs, balance, and stoop; but cannot climb ladders, ropes, or scaffolds. *See* (AR at 26). The ALJ gave no weight to both Dr. Eidson and the single decision maker's opinions, which were the only pieces of the record to touch upon Plaintiff's ability to do these things. Without references to

---

[4] Dr. Cohen reported that Plaintiff presented to him with "constant pain in the back radiating down the right leg" due to the removal of spinal osteoblastoma. He conducted an examination and noted normal strengths in both arms, mild atrophy of the right calf, somewhat shorter right leg than right, normal strengths in the legs, except for mild weakness of right plantar and dosiflexion. Ultimately, he assessed "chronic lumbar canal stenosis post surgery with S1 over L5 symptoms and signs." However, he concluded that he could not "improve upon her current use of daily" pain medications. (AR at 382.) The ALJ's decision does not specifically mention this diagnosis. On remand, she should do so.

the portions of the record that support these limitations, this Court "cannot determine the source, medical or otherwise, for most, if not all, of the limitations contained in the ALJ's RFC findings." *Allen v. Astrue*, No. 09-1271, 2010 WL 2925169, at *4 (D. Kan. July 21, 2010). To the extent there is very little medical evidence directly addressing Plaintiff's RFC, "the ALJ made unsupported findings concerning her functional abilities." *Fleetwood v. Barnhart*, 211 F. App'x 736, 740 (10th Cir. 2007). "Without evidence to support [her] findings, the ALJ was not in a position to make an RFC determination." *Id.*

This Court is mindful that the ALJ need not follow a medical opinion, and that at step four, it is Plaintiff's burden to show that her impairments render her unable to perform her past relevant work. *See Castine v. Astrue*, 334 Fed. App'x 175, 179 (10th Cir. 2009) (order and judgment). However, because this case is being remanded, the Court instructs the ALJ to reassess Plaintiff's RFC, include record support for her assessment, and scrupulously represent the record in her decision.

## C.   WHETHER THE ALJ ERRED IN ASSESSING PLAINTIFF'S CREDIBILITY

Finally, because this issue is likely to arise on remand, the Court will address Plaintiff's contention that the ALJ erred when she determined that Plaintiff was not credible.

"[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2011) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). Provided the ALJ links her credibility assessment to specific evidence in the record, her determination is entitled to substantial deference. *Id.* at 910; SSR 96-7p,

1996 WL 374186, at *2 (July 2, 1996) (ALJ's decision "must contain specific reasons for the finding on credibility, supported by evidence in the case record"). Because the determination of credibility is left to the ALJ as the finder of fact, that determination is generally binding on a reviewing court.

Plaintiff contends that the ALJ erred by failing to properly apply the factors delineated in SSR 96-7p in assessing her credibility. That regulation provides a non-exhaustive list of factors that an ALJ's must consider in addition to the objective medical evidence. Those factors include: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) medications and any side effects; (5) treatment, other than medication, that the individual has received; (6) measures other than treatment that Plaintiff uses to relive pain; and (7) any other relevant factors. SSR 96-7P, 1996 WL 374186, *3. Though the ALJ did not recite the list of factors, her analysis addressed several of these considerations, as well as other relevant factors. *See* (AR at 27) (daily activities); (AR at 27) (medications and side effects); (AR at 29) (treatment history). The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must set forth only the specific evidence he relied upon in evaluating Plaintiff's testimony. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The Court finds that the ALJ's analysis was sufficient. However, on remand, she should reconsider Plaintiff's credibility in light of the factual errors discussed in this order.

Plaintiff takes particular issue with the ALJ's decision to discredit her based on her testimony regarding tobacco use. The ALJ explained:

> At the hearing, the claimant testified that she has smoked only one pack of cigarettes every four days for the year leading up to the hearing. However, the medical evidence indicates that the claimant reported a pack per day habit at a primary care visit as recently as December of 2010, eight months prior to the hearing. (Exhibit 3F).

(AR at 29.) As Plaintiff points out, the December 27, 2010 treatment record notes that Plaintiff smokes "approximately one pack per day" but then goes on to state that she smokes 4-5 cigarettes per day. (AR at 275-76.) Although these two statements are contradictory, the ALJ is entitled to resolve inconsistencies in the record. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

Plaintiff also contends that the ALJ erred in relying on Plaintiff's appearance and demeanor. "Although an ALJ may not rely solely on [her] personal observations to discredit a plaintiff's allegations, she may consider [her] personal observations in [her] overall evaluation of the claimant's credibility." *Qualls*, 206 F.3d at 1373 (citing *Teter v. Heckler,* 775 F.2d 1104, 1106 (10th Cir.1985) (where other evidence corroborates claimant's pain as genuine, ALJ may not reject claimant's allegations solely on basis of her demeanor); SSR 96–7p, 1996 WL 374186, at *8 (ALJ may not accept or reject claimant's allegations based solely on ALJ's personal observation of claimant, but ALJ should consider personal observations in overall evaluation of claimant's credibility)). Here, the ALJ properly considered her personal observations of Plaintiff as part of her overall assessment of Plaintiff's credibility. Therefore, the ALJ did not err in assessing Plaintiff's credibility.[5]

---

[5] Plaintiff asks this Court not to remand this case and instead enter a finding of disability and award benefits. However, the Court is not is a position to find Plaintiff disabled as a matter of law. *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) ("Outright reversal and

## IV. **CONCLUSION**

Accordingly, it is ORDERED that the ALJ's denial of social security disability benefits is REVERSED. This case is REMANDED to the Commissioner for proceedings consistent with this Order.

DATED: May __20__, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose.")